David Schexnaydre, *Pro Hac Vice*
david@schexnaydre.com
SCHEXNAYDRE LAW FIRM
2895 Hwy 190, Ste 212
Mandeville, LA 70471
Telephone: (985) 292-2020
Fax: (985) 235-1089

Jennifer W. Kennedy, CA SBN 185406
jenniferkennedyesq@gmail.com
JENNIFER W. KENNEDY
ATTORNEY AT LAW
61 S. Baldwin Ave. #1626
Sierra Madre, CA 91025
Telephone: (626) 888-2263

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| MEKKA EDWARDS, JUSTEN HOLM, CODY LaROCCO, BRIAN INTERLICCHIA, LIANA MELIK-ADAMYAN, RACHELLE PANICCIA, VINCENT TSAI, AND GLENN VAN EEKHOUT,<br><br>            Plaintiffs,<br><br>vs.<br><br>THE COUNTY OF LOS ANGELES; HILDA L. SOLIS, JANICE HAHN, KATHRYN BARGER, SHEILA KUEHL, MARK RIDLEY-THOMAS, AS INDIVIDUALS AND IN THEIR OFFICIAL CAPACITIES AS CHAIR AND MEMBERS OF THE COUNTY | Case No.:<br><br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS, BREACH OF CONTRACT, AND WRONGFUL TERMINATION;**<br>**DEMAND FOR JURY TRIAL** |

1

BOARD OF SUPERVISORS; AND
DOES 1-100, INCLUSIVE,

        Defendants.

NOW INTO COURT, through undersigned counsel, come Plaintiffs Mekka Edwards, Justen Holm, Brian Interlicchia, Liana Melik-Adamyan, Rachelle Paniccia, Vincent Tsai, and Glenn Van Eekhout (hereinafter "Plaintiffs"), who file this Complaint against Defendants, the County of Los Angeles, Hilda L. Solis, Janice Hahn, Kathryn Barger, Sheila Kuehl, and Mark Ridley-Thomas (hereinafter "Defendants"), presenting allegations and causes of action as follows:

## I.   **INTRODUCTION**

1.   This cause of action arises out of Plaintiffs' financial, emotional, and legal injuries resulting from policies adopted, executed, and enforced by the County of Los Angeles and its PolicyMakers.

2.   The cause of action is for money damages brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiffs' clearly established rights against (1) Defendants, Hilda L. Solis, Chair of the Los Angeles County Board of Supervisors, and Janice Hahn, Kathryn Barger, Sheila Kuehl, and Mark Ridley-Thomas, Members of the Los Angeles County Board of Supervisors, in their respective capacities as Chair and Members of the Board, and

2

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS, BREACH OF CONTRACT, AND WRONGFUL TERMINATION; DEMAND FOR JURY TRIAL

as PolicyMakers of the County of Los Angeles, for their respective violations of Plaintiffs' statutory and constitutional right to refuse an investigational drug or device authorized under the EUA statute (21 U.S.C. §360bbb-3) and/or under the PREP Act, without incurring a penalty; and (2) Defendant County of Los Angeles ("Los Angeles County" or "County") for its unconstitutional policies, customs, and/or practices under *Monell v. Department of Social Services of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1914) and its progeny, and for breach of contract and wrongful termination pursuant to California Government Code § 12940 *et seq*. The County of Los Angeles and Hilda L. Solis will be referenced collectively as Defendants ("Defendants") herein.

## II.    <u>JURISDICTION AND VENUE</u>

3.    This Court has federal-question jurisdiction under 42 U.S.C. §1983 for violations of civil rights under the Fourteenth Amendment to the United States Constitution.

4.    The case presents a federal question within the Court's jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. §§ 1131 and 1343.

5.    Venue is proper in this Court under 28 U.S.C. § 1391 because at all times pertinent, the parties resided in this District, and a substantial part of the events giving rise to this claim occurred in this District.

---

6.      This Court has the authority and jurisdiction to award costs and reasonable attorneys' fees under 42 U.S.C. § 1988.

7.      This court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. 1367.

8.      This Court has personal jurisdiction over Defendants as they are, or at the time of their actions were, domiciled within this Court's jurisdictional boundaries.

9.      This Court has subject matter jurisdiction over the parties because all acts complained of herein were committed by Defendants in the State of California and caused damage and/or deprivation to the Plaintiffs listed herein.

### III.    PLAINTIFFS

10.     The following individuals are plaintiffs herein:

1.  Plaintiff Mekka Edwards is an adult individual who all times pertinent was employed by the County of Los Angeles.

2.  Plaintiff Justen Holm is an adult individual who all times pertinent was employed by the County of Los Angeles.

3.  Plaintiff Cody LaRocco is an adult individual who all times pertinent was employed by the County of Los Angeles.

4.  Plaintiff Brian Interlicchia is an adult individual who all times pertinent was employed by the County of Los Angeles.

5. Plaintiff Liana Melik-Adamyan is an adult individual who all times pertinent was employed by the County of Los Angeles.

6. Plaintiff Rachelle Paniccia is an adult individual who all times pertinent was employed by the County of Los Angeles.

7. Plaintiff Vincent Tsai is an adult individual who all times pertinent was employed by the County of Los Angeles.

8. Plaintiff Glenn Van Eekhout is an adult individual who all times pertinent was employed by the County of Los Angeles.

## IV.   **DEFENDANTS**

11.    The following are named as defendants herein:

1.    Defendant, the County of Los Angeles ("County" or "County of Los Angeles County"), is a County located in the State of California.

2.    Defendant Hilda L. Solis was the Chair of the Los Angeles County Board of Supervisors for all times pertinent. Ms. Solis is named as a defendant in her individual and official capacities.

3.    Defendant Janice Hahn was a Supervisor of the Los Angeles County Board of Supervisors for all times pertinent. Ms. Hahn is named as a defendant in her individual and official capacities.

4.    Defendant Kathryn Barger was a Supervisor of the Los Angeles County Board of Supervisors for all times pertinent. Ms. Barger is named as a

defendant in her individual and official capacities.

5.     Defendant Sheila Kuehl was a Supervisor of the Los Angeles County Board of Supervisors for all times pertinent. Ms. Kuehl is named as a defendant in her individual and official capacities.

6.     Defendant Mark Ridley-Thomas was a Supervisor of the Los Angeles County Board of Supervisors for all times pertinent. Mr. Ridley-Thomas is named as a defendant in his individual and official capacities.

Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as 1 through 100, inclusive, and therefore sue these defendants by fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

## V.     FACTUAL BACKGROUND

### A.     CDC COVID-19 VACCINATION PROGRAM

12.     In 2020, the federal government created the CDC COVID-19 Vaccination Program ("CDC Program") to recruit states to help it administer COVID-19 drugs it purchased through the Department of Defense ("DoD").

13.     In October 2020, the CDC recruited states to help it administer the product and issued guidance for participating in the CDC Program under the

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS, BREACH OF CONTRACT, AND WRONGFUL TERMINATION; DEMAND FOR JURY TRIAL

"COVID-19 Vaccination Program Interim Operational Guidance Jurisdiction Operations" playbook ("Playbook").[1]

14.     The State was required to "closely monitor activities at the local level **to ensure** the COVID-19 Vaccination Program is implemented throughout the jurisdiction in adherence with federal guidance and requirements."[2] (emphasis added)

15.     The CDC Program established the CDC COVID-19 Vaccination Program Provider Agreement[3] ("Provider Agreement") for persons participating in the CDC Program to agree to its terms and to sign as an assurance of that agreement.

16.     Line 12(a) of the Provider Agreement requires strict adherence to the requirement of the EUA statute and "any EUA letter" to inform individuals of their right to accept or refuse any product authorized under the statute.[4]

17.     The State of California ("State") willfully participated in the CDC Program and agreed to perform on behalf of the federal government, which required the State to incorporate the Provider Agreement into State Policy.

———————————————

[1] See Exhibit A, CDC Playbook
[2] See Exhibit A, CDC Playbook, p. 8
[3] See Exhibit B, CDC Provider Agreement
[4] 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III)

18.     The State had enforcement responsibility for the CDC Program within its jurisdiction, owing Fourteenth Amendment duties to individuals participating in the COVID-19 vaccination program.

B.     **FEDERALLY OWNED INVESTIGATIONAL DRUGS**

19.     The CDC Program relied exclusively on federally funded, FDA-labeled investigational new drugs only authorized for emergency use under the EUA statute.

20.     The federal government was bound to 45 C.F.R. Part 46, 10 U.S.C. § 980, and the Belmont Report once it purchased the investigational drugs using DoD and other federal agency funding.

21.     45 C.F.R. § 46.116 and the Belmont Report places a duty upon any person offering the federally owned COVID-19 EUA/PREP Act drugs to ensure an individual is not under a "sanction," "coercion," "unjustifiable pressures," or "undue influence" to use the products.

22.     The State has Federal Wide Assurance ("FWA") number FWA00000681, assuring the federal government that any time it involves individuals with federally funded investigational drugs, it will comply with 45 C.F.R. Part 46 and the Belmont Report.

23.     The Secretary issued EUAs for the (1) Pfizer-BioNTech COVID-19 Vaccine on December 11, 2020, stating that "Pfizer-BioNTech COVID-19

8

Vaccine" "is an investigational vaccine not licensed for any indication,"[5] (2) "Moderna COVID-19 Vaccine" on December 18, 2020 stating that "Moderna COVID-19 Vaccine" "is an investigational vaccine not licensed for any indication,"[6] and (3) "Janssen COVID-19 Vaccine" on February 27, 2021, Inc., stating that "Janssen COVID-19 Vaccine" "is an investigational vaccine not licensed for any indication."[7]

24.     As a matter of law, no person can require another person to be administered an investigational drug, nor can that person come under threat of penalty for refusing such administration.

## C.     EMERGENCY USE AUTHORIZATION ("EUA")

25.     The United States Health and Human Services Secretary ("Secretary") is authorized to grant expanded access protocols[8] for unapproved drugs during a declared emergency, exempting them from the FDCA provisions applicable to new drugs.[9]

_____

[5] 86 Fed.Reg. 5200, Jan. 19, 2021
[6] 86 Fed.Reg. 5200, Jan. 19, 2021
[7] 86 Fed.Reg. 28608, May 27, 2021
[8] 21 U.S.C. §360bbb-3(a)(1)
[9] 21 U.S.C. §355(a)

9

26.     Still, Congress was explicit that "nothing in this section provides the Secretary any authority to require any person to carry out any activity that becomes lawful pursuant to an authorization under this section" (21 U.S.C. §360bbb-3(l)).[10]

27.     In other words, the Secretary has no authority to require any person to manufacture, distribute, store, administer, or use any EUA product.

28.     The Secretary's authority is nondelegable.

29.     The Secretary is required to establish the "Conditions of Authorization" under each EUA to which all volunteering parties agree to adhere.

30.     The Secretary declared that an "emergency response stakeholder …refers to a public health agency and its delegates that have legal responsibility and authority for responding to an incident, based on political or geographical boundary lines (e.g., city, county, tribal, territorial, State, or Federal), or functional (e.g., law enforcement or public health range) or sphere of authority to administer, deliver, or distribute vaccine in an emergency situation."[11]

31.     The Secretary created the following duty: "Emergency response stakeholders will identify vaccination sites to receive authorized Pfizer-BioNTech COVID-19 Vaccine **and ensure its** distribution and **administration**, **consistent**

_____

[10] 21 U.S.C. § 321(e) "individual, partnership, corporation, and association"
[11] See Exhibit C, August 23, 2021, EUA letter, Footnote 12

with the terms of this letter and CDC's COVID-19 Vaccination Program" (emphasis added).

32.     The Secretary defined "vaccination provider" as a "facility, organization, or healthcare provider licensed or otherwise authorized by the emergency response stakeholder (e.g., non-physician healthcare professionals, such as nurses and pharmacists pursuant to state law under a standing order issued by the state health officer) to administer or provide vaccination services in accordance with the applicable emergency response stakeholder's official COVID-19 vaccination and emergency response plan(s) and who is enrolled in the CDC COVID-19 Vaccination Program."[12]

33.     The Secretary established a duty that the vaccination provider "will administer the vaccine in accordance with the authorization and will participate and comply with the terms and training required by CDC's COVID-19 Vaccination Program."

34.     The phrases "will administer" and "in accordance" include performing the ministerial act of accepting an individual's right to accept or refuse under the EUA statute.

———————————————

[12] See Exhibit C, August 23, 2021, EUA letter, Footnote 13

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS, BREACH OF CONTRACT, AND
WRONGFUL TERMINATION; DEMAND FOR JURY TRIAL

35.     As a matter of law, no person has the authority to require another person to participate in any drug, biologic, or device authorized for emergency use because such product has no legal indication by the FDA to treat, cure, or prevent any known disease.

**D.     PREP Act ("PREP Act")[13]**

36.     All drugs (e.g., Pfizer-BioNTech COVID-19 Vaccine) and devices (e.g., masks, testing articles, etc.) required under Defendant's Executive Order were/are listed as countermeasures under the PREP Act.

37.     Individuals using a covered countermeasure must do so willfully because the PREP Act requires the individual to surrender their Fourteenth Amendment litigation rights should they sustain injury from the use of the countermeasure or its administration. [14]

38.     Congress was adamant that "no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that— (A) is different from, or is in conflict with, any requirement applicable under this section; and (B) relates to the…administration…of the covered countermeasure, or to any matter

---

[13] 42 U.S.C. § 247d-6d and 42 U.S.C. § 247d-6e
[14] 42 U.S.C. § 247d-6e(c)

included in a requirement applicable to the covered countermeasure under this section or any other provision of this chapter, or under the Federal Food, Drug, and Cosmetic Act." ("FDCA")[15]

39.     The EUA statute's option to accept or refuse is a requirement under the FDCA.[16]

40.     As a matter of law, no person can require any other person to participate in a covered countermeasure or activity authorized pursuant to the PREP Act.

## V.      **FACTUAL ALLEGATIONS**

**A.      Deprivation of Plaintiffs' Rights**

**I.      The Executive Order**

41.     On or about August 4, 2021, County of Los Angeles Chair of the Board of Supervisors, Hilda L. Solis, using the authority of her office to issue executive orders, issued an Executive Order[17] to "establish a mandatory vaccination policy, effective immediately, which requires all County employees to provide proof of full vaccination by October 01, 2021."

---

[15] 21 U.S.C. § 301 *et. seq.*
[16] See 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III)
[17] See Exhibit D, Executive Order

13

42.     On or about August 10, 2021, the County of Los Angeles Board of Supervisors ratified the Chair's Executive Order and mandated compulsory use of the federally funded investigational new drugs (hereinafter "Policy").

43.     The County issued a letter to County employees on October 12, 2021, informing County employees that they must comply with the Policy no later than October 1, 2021, which was eleven days earlier than the notice issued by Lisa M. Garrett, Director of Personnel.

44.     From August 04, 2021, through the fall of 2023, the only drugs available for compliance with the Executive Order were federally funded COVID-19 investigational new drugs authorized only for emergency use.

45.     From August 04, 2021, through the filing of this Complaint, the only drugs available to employees of Los Angeles County are listed as covered countermeasures under the PREP Act.

46.     Therefore, it cannot be credibly disputed that Defendants exclusively relied on federally funded COVID-19 EUA/PREP Act drugs for compliance with the Executive Order.

47.     Moreover, Defendants knew before they established and enforced its Policy that no drug licensed by the FDA for general commercial marketing existed in the marketplace for compliance with the Executive Order.

**II. Chair Hilda L. Solis**

14

48.     "A person, 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) citing *Sims v. Adams* (5th Cir. 1976).

49.     Defendant Solis, Chair of the Los Angeles County Board of Supervisors ("BOS"), and also an employee of the County of Los Angeles, had the authority to propose legislation to the BOS, issue executive orders, promulgate orders and regulations during a declared emergency.

50.     "Los Angeles County Code ("LACC") section 2.68.150 empowers the chair of the Board, during a proclaimed local emergency, to promulgate orders and regulations necessary…"

51.     Defendant Hilda Solis proclaimed in unambiguous language, "I issued an Executive Order directing: (1) the Chief Executive Officer, in consultation with the Office of the County Counsel and the Departments of Human Resources and Public Health, to establish a mandatory vaccination policy, effective immediately, which requires all County employees to provide proof of full vaccination by

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS, BREACH OF CONTRACT, AND WRONGFUL TERMINATION; DEMAND FOR JURY TRIAL

October 1, 2021; and (2) the Chief Executive Officer to engage with the County's labor partners regarding the effects of the vaccination policy."[18]

52.     Defendant Hilda Solis issued the Executive Order, requested the BOS to ratify her Executive Order, and required County employees to execute and enforce the Executive Order and its ratified counterpart.

53.     The BOS ratified the Chair's Executive Order by a majority vote, causing the BOS to be the final policymaker relating to the challenged conduct herein.

54.     Defendants' COVID-19 vaccination Policy ("Policy"), relying upon the exclusive use of federally funded COVID-19 EUA/PREP Act drugs, was unlawful, capricious, arbitrary, and violated clearly established law.

55.     Defendants were preempted by the Supremacy Clause from amending the FDCA when they removed the option to refuse without penalty from the EUA statute.

56.     Defendants were preempted by the express preemption language of the PREP Act from requiring non-voluntary use of a covered countermeasure.

_____

[18] See Exhibit D, Executive Order, p. 33.

57.   Defendants violated clearly-established law when the Policy amended the conditions of authorization under each EUA letter to require that which Congress prohibits—nonconsensual participation. [19]

58.   Defendants could not require any person to manufacture, distribute, administer, or use any EUA/PREP Act product.[20]

59.   Defendants could not require Plaintiffs to surrender their Fourteenth Amendment litigation rights under the PREP Act as a condition of enjoying public employment, which the Policy effectuated.

60.   Defendants could not enact a Policy treating individuals exercising the option to accept an EUA product differently than persons choosing the option to refuse without violating the Equal Protection Clause.

61.   Both options were created for the benefit of individuals considering the use of the product, and both options must be treated equally before the law.

62.   Defendants were aware that the County of Los Angeles's Federal Wide Assurance agreement (FWA00000071) assured the federal government that

———————————

[19] *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992); *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008); *Perez v. Nidek Co.*, 711 F.3d 1109, 1119 (9th Cir. 2013), *Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*, 48 F4th 1040, 1049 (9th Cir. 2022), *Perez v. Nidek Co.*, 711 F.3d 1109 (9th Cir. 2013).
[20] 21 U.S.C. § 360bbb-3(l)

the County would comply with 45 C.F.R. Part 46 and the Belmont Report anytime it involved individuals with investigational drugs (e.g., Pfizer-BioNTech COVID-19 Vaccine) funded by the federal government (e.g., CDC Program).

63.     Defendants were reckless because they did not ascertain the extent of their authority before issuing the Policy requiring nonconsensual use of an EUA/PREP Act product.

64.     Defendants issuing the Executive Order demonstrates a reckless, willful, and wanton disregard for Plaintiffs' rights, health, and safety.

65.     One investigational drug has more than one-trillion potential contraindications involving more than 19,000 FDA-licensed drugs, biologics, devices, and hundreds of diseases.

66.     It is for this explicit reason that Congress passed the 1974 National Research Act and established 45 C.F.R. Part 46 in 1981 and the FWA in 2001 to ensure that individuals who are offered federally funded investigational drugs are made aware of their right to accept at their own risk, but without being placed under outside pressures as outlined in 45 C.F.R. §46.116 and the Belmont Report.

67.     Individuals who consent to use federally funded COVID-19 EUA/PREP Act drugs must agree to the following terms and conditions, including but not limited to:

A.  forfeiture of civil litigation rights under the Fourteenth Amendment resulting from injuries;[21]

B.  allowing their private identifiable information to be collected and used for a variety of purposes by unknown persons;[22]

C.  allow their involvement with the EUA product to be cataloged by various persons for unknown purposes,

D.  allow the data collected about their adverse events to be utilized by researchers for unknown purposes and for eternity,[23]

E.  assume greater risks to their safety, health, and legal rights.[24]

68.  At all times pertinent, these facts were concealed from Plaintiffs.

69.  Defendants had discretionary authority to recruit vaccination providers and to provide the product to willful participants.

---

[21] PREP Act forfeits all civil actions for damages in most situations.

[22] Each EUA and/or the CDC COVID-19 Vaccination Program Provider Program requires manufacturers and/or emergency stakeholders to obtain private identifiable information.

[23] Each EUA and/or the CDC COVID-19 Vaccination Program Provider Program requires manufacturers and/or emergency stakeholders to monitor, report and study a variety of adverse reactions to EUA products.

[24] 21 U.S.C. §360bbb-3 requires potential recipients to be made aware of the risks, alternatives, and the fact that the product is only authorized by the Secretary under emergency conditions.  These elements provide potential recipients with the required information to make a quality and legally effective decision to consent.  Therefore, consent means the individual agrees to assume more than minimal risk as defined in 21 CFR 50.3(k).

70.    Defendants only had a ministerial duty to accept an individual's chosen option under the EUA statute and were restricted from issuing any legal requirement placing individuals under threat of penalty for refusing to participate in the EUA product's administration.

71.    The Ninth Circuit Court of Appeals provided fair-warning to public officials that should they refuse to perform a ministerial function, they are not entitled to qualified immunity (*Groten v. California*, 251 F.3d 844 (9th Cir. 2001)).

72.    Defendants' Policy, which could only be met by using federally funded EUA/PREP Act investigational drugs, required that County employees who were administering the drugs forego the ministerial act of accepting a potential recipient's choice to refuse an EUA/PREP Act drug without penalty.

73.    At all times pertinent, Defendants acted with deliberate indifference to Plaintiffs' rights, health, and safety, when they established, executed, and enforced an official policy under *ultra vires* authority, in violation of Plaintiffs' Fourteenth Amendment Constitutional rights.

**IV.    NOTICES**

74.    Defendants were provided notice of each EUA published in the Federal Register informing that they must "ensure" individuals were made aware of their right to accept or refuse an EUA/PREP Act product.

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS, BREACH OF CONTRACT, AND
WRONGFUL TERMINATION; DEMAND FOR JURY TRIAL

75.     Defendants were provided notice that each product under the Executive Order was listed as a PREP Act countermeasure in the Federal Register.

76.     Defendants were provided notice that they, as emergency response stakeholders, had duties to comply with the EUA statute.

77.     Defendants were provided notice that each of its vaccination providers was bound to the terms of the Provider Agreement requiring adherence to the EUA statute's option to accept or refuse.

78.     All County of Los Angeles medical agencies (e.g., Los Angeles County Emergency Med Services Agency) had a Provider Agreement promising to perform the ministerial act under the EUA statute.

79.     The County of Los Angeles was an emergency response stakeholder under the State's CDC Program.

80.     Defendants issued a Policy that cannot reconcile with its FWA, Provider Agreements, CDC Program, 45 C.F.R. Part 46, or the Belmont Report.

81.     Defendants cannot produce a constitution, statute, regulation, contract, or other source affording it the authority to amend the FDCA, EUA, or PREP Act by requiring nonconsensual use of an EUA product or a covered countermeasure.

82.     Defendants were notified under each EUA that it must comply with the EUA statute, specifically 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III), and to obtain

21

legally effective informed consent from potential recipients of the EUA/PREP Act drugs.

83.    Defendants concealed from Plaintiffs that the mandated COVID-19 drugs had EUA investigational status; that they were also covered under the PREP Act; and that Plaintiffs had the right to refuse the drugs without incurring a penalty or losing a benefit to which they were otherwise entitled.

84.    Defendants issued a "vaccination" Policy but exclusively relied on non-vaccines for compliance in violation of its legal duties and constitutional obligations.

85.    Defendants' Policy is the official policy that Defendants enacted, executed, and enforced, which is the direct and proximate cause of Plaintiffs' financial, emotional, and legal injuries.

86.    Plaintiffs sustained financial, emotional, and legal[25] damages directly related to Defendants depriving Plaintiffs of their Constitutional and federal statutory rights to be free from "sanctions," "coercion," "undue influence," and

---

[25] For the Plaintiffs who used the investigational drugs under duress and have developed or will develop an injury from the product's use, their due process rights to seek judicial relief have been deprived of them by an act of fraud by Defendants.

"unjustifiable pressures" when involved in a federally funded investigational drug, biologic, or device.

87.     Defendants engaged in lawless activity that shocked the conscience as outrageous, intolerable, and extreme, and placed Plaintiffs under severe emotional distress, fearing for their lives[26] and livelihoods. Such debased leadership is unheard of in modern societies and exceeds the bounds of decency.

## VI. LEGAL CLAIMS

88.     The facts described above constitute a deprivation of several rights guaranteed to Plaintiffs by the United States Constitution, federal statutes, and treaties.

89.     These deprivations are actionable under 42 U.S.C. § 1983 because the Defendants acted under color of state law when enacting and acting upon Executive Order involving federally funded COVID-19 EUA/PREP Act drugs.

---

[26] The Vaccine Adverse Event Reporting System (VAERS) reported 1,562,008 entries from December 2020 through May 26, 2023, including 35,272 deaths (1.6 per hour) and 263,462 (12.11 per hour) serious injuries for the new and unvetted mRNA drugs. These numbers demonstrate historical entries for any drug reported to VAERS since it was first established.

90.    Court precedent demonstrates that federal statutes and regulations with rights conferring language are enforceable under 42 U.S.C. §1983.[27]

91.    Defendants were, and are, restricted from attempting to amend, or amending, the above-referenced statutes, regulations, treaties, agreements, and contracts due to the Supremacy Clause Doctrine and express language under the PREP Act.

92.    The Supremacy Clause Doctrine and the express preemption language in the PREP Act and the EUA statute restrict public and private employers from using laws, Executive Orders, or regulations to require individuals to participate in any EUA or PREP Act activity or use any EUA or PREP Act product.

93.    This extends to any at-will employment law, doctrine, or custom an employer would otherwise claim as the right to interfere with the EUA statute, or PREP Act protocols and to amend conditions established by Congress for Plaintiffs' benefit.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 – Deprivation of the Right to Refuse**

———————————————

[27] *Maine v. Thiboutot*, 448 U.S. 1 (1980), the court held: "Even were the language ambiguous, however, any doubt as to its meaning has been resolved by our several cases suggesting, explicitly or implicitly, that the §1983 remedy broadly encompasses violations of federal statutory as well as constitutional law." See also, *Health and Hospital Corporation of Marion Cty. V. Talevski.*

94.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 93, as if fully set forth herein.

95.     The EUA statute contains a required condition of the Secretary "to ensure that individuals to whom the product is administered are informed — 'of the option to accept or refuse administration of the product.'"[28]

96.     Defendants were informed of the requirements of each COVID-19 EUA drug when published in the Federal Register requiring strict adherence of emergency response stakeholders and vaccination providers to perform the ministerial act of accepting Plaintiffs' choice to accept or refuse.

97.     Defendants were informed of the requirements under the Provider Agreement requiring strict adherence to the EUA statute.

98.     The option to accept or refuse is an exclusive right held by Plaintiffs, with which Defendants were completely preempted from interfering by penalizing Plaintiffs for exercising the option to refuse.

99.     At all times pertinent, Defendants were acting under color of state law as a municipality and as Chair of the Board of Supervisors of Los Angeles County.

---

[28] 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III)

100.   At all times pertinent, Defendants never informed Plaintiffs where, when, and how to obtain a licensed vaccine to comply with the Policy.

101.   Defendants enacted their Policy with a deadline they knew would pass before an FDA-licensed COVID-19 vaccine was available to Plaintiffs.

102.   For compliance with its Policy, Defendants knowingly relied exclusively on EUA/PREP Act drug investigational drugs that had no legal indication to treat, cure, or prevent COVID-19.

103.   "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972)

104.   "Property interests, of course, are not created by the Constitution. Rather, they are created, and their dimensions are defined, by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Thus, the welfare recipients in *Goldberg v. Kelly* had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972)

105.   The right to refuse an EUA/PREP Act investigational drug is a legitimate property interest claim by Plaintiffs, and such was their expectation when Defendants issued the Executive Order with only investigational drugs available for compliance.

106.   Defendant Hilda Solis requested that the BOS deprive Plaintiffs of their property interest in refusing an EUA/PREP Act drug by ratifying her Executive Order.

107.   Defendants compelled County employees (e.g., human resources, department managers, etc.) to enforce the Policy by unlawfully terminating Plaintiffs for refusing EUA/PREP Act investigational drugs.

108.   The Executive Order was reckless, arbitrary, capricious, unlawful, and dangerous.

109.   Defendants were bound to perform the ministerial act of accepting Plaintiffs' chosen option to refuse the investigational drugs.

110.   The Ninth Circuit Court of Appeals provided fair-warning to Defendant PolicyMakers that should they refuse to perform a ministerial function, they are not entitled to qualified immunity (*Groten v. California*, 251 F.3d 844 (9th Cir. 2001)).

111.   Defendant PolicyMakers acted with deliberate indifference to the legal rights, financial, and emotional well-being of Plaintiffs.

112.   Defendant PolicyMakers refused to perform the ministerial act of accepting Plaintiffs' chosen option to refuse under the EUA statute and penalized Plaintiffs upon their exercising the option to refuse.

113.   As a direct and proximate result of the acts and omissions described herein, Plaintiffs suffered compensatory and special damages in an amount to be determined by a jury.

114.   The Defendants' actions described above, individually and/or collectively, acting under color of law, and in deprivation of the Constitutional rights and rights secured by the above federal statutes, regulations, and treaty, unlawfully deprived Plaintiffs of their right to refuse under 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III)  without the threat of penalty, thereby causing them damages described in Paragraphs 227 through 232, *infra*.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 – Deprivation of Equal Protection Rights

115.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 93, as if fully set forth herein.

116.   The Fourteenth Amendment to the U.S. Constitution guarantees equal protection of the laws.

117.   The EUA statute contains a required condition of the Secretary "to ensure that individuals to whom the product is administered are informed — 'of the option to accept or refuse administration of the product.'"[29]

118.   None of the products listed under the Executive Order had a legal indication to treat, cure, or prevent the COVID-19 virus.

119.   None of the manufacturers of the COVID-19 drugs listed in the Executive Order claimed to treat, cure, or prevent the COVID-19 virus.

120.   The U.S. Government, the State of California, and all vaccination providers, including all Organizations under the Provider Agreement, were under strict requirements to only offer the EUA/PREP Act products under voluntary conditions.

121.   Plaintiffs have a fundamental right to refuse to be injected with an EUA/PREP Act investigational drug.

122.   Thus, Defendants' actions must be viewed under the strict scrutiny standard.

123.   Defendants cannot show a compelling state interest in violating federal law, contractual obligations (i.e., Provider Agreement, FWA), Plaintiffs'

---

[29] 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III)

rights, and the U.S. Constitution by mandating products that were only investigational, untested, and had historic adverse reactions.

124.   The option to accept is no less and no greater than the option to refuse.

125.   Defendants had a Fourteenth Amendment equal protection duty to treat individuals choosing the option to accept equally with those who chose the option to refuse.

126.   Defendants had a Fourteenth Amendment equal protection duty to treat individuals participating in the administration of a covered countermeasure equally with persons refusing to participate in the administration of the same countermeasure.

127.   Defendants only applied punitive damages to County employees who chose the option to refuse an EUA and/or PREP Act product.

128.   The County issued a vaccination Policy violating the equal protection doctrine by only penalizing individuals who refused the administration of the federally funded investigational drugs by requiring employees to exercise their

right to refuse to test for COVID-19 as many times a week as the County deemed appropriate.[30]

129.   However, no COVID-19 drug manufacturer claimed their product would prevent any person from acquiring any variant of the COVID-19 virus. Therefore, the requirement was arbitrary, capricious, and violated the Equal Protection Clause.

130.   The testing policy was only enacted as a means to coerce participation in an unlicensed medical product, having potentially severe legal consequences for the end user of the product.

131.   The County policy[31] required only employees who refused to inject the investigational new drug to register with Fulgent Genetics and to submit to the company's testing articles, in violation of Plaintiffs Equal Protection rights.

132.   At all times pertinent, Defendants intentionally penalized only Plaintiffs who exercised their right to refuse an EUA/PREP Act drug (e.g., Pfizer-BioNTech COVID-19 Vaccine) or device (e.g., masks, COVID-19 testing articles), thereby applying the laws unequally to Plaintiffs and depriving them of their Constitutional Equal Protection Rights.

---

[30] Exhibit D, Executive Order, p. 34
[31] Exhibit D, Executive Order, p. 34

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS, BREACH OF CONTRACT, AND WRONGFUL TERMINATION; DEMAND FOR JURY TRIAL

133.   The Defendants' actions described above, individually and/or collectively, and in derogation of the Constitution and the above statutes, regulations, and treaty, have deprived the Plaintiffs of their equal protection rights as described in the above facts, thereby causing them damages described in Paragraphs 227 through 232, *infra*.

## THIRD CAUSE OF ACTION
## 42 U.S.C. § 1983 – Deprivation of Procedural Due Process Rights

134.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 93, as if fully set forth herein.

135.   The Fourteenth Amendment requires Defendants to ensure Plaintiffs can "present [their] case and have its merits fairly judged" (*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)) before Plaintiffs are deprived of their life, liberty, or property interest.

136.   Defendants' enactment and enforcement of its Policy stripped Plaintiffs of their property interest to refuse under the EUA statute and to due process under the PREP Act.

137.   Moreover, the Policy deprived Plaintiffs of their property interest in public employment without the opportunity to have their "merits fairly judged."

138.   At all times pertinent, Defendants deprived Plaintiffs of their federal right under the EUA statute to refuse investigational drugs without penalty.

139.   At all times pertinent, Defendants deprived Plaintiffs of their federal right under the PREP Act to be educated regarding the voluntary nature of the Program.

140.   No matter the process, if persons in positions of authority, such as Defendants, refuse to accept the supremacy of the laws of the United States Congress and apply them honestly, then due process is impossible to secure.

141.   Defendants refused to accept the supremacy of federal laws and failed to apply them honestly, thus depriving Plaintiffs' right to due process before being deprived of their Constitutional and federal statutory rights.

142.   The Defendants' actions described above, individually and/or collectively, and in derogation of the Constitution and the above statutes, regulations, and treaty, have deprived the Plaintiffs of their procedural due process rights as described in the above facts, thereby causing them damages described in Paragraphs 227 through 232, *infra*.

## FOURTH CAUSE OF ACTION
## 42 U.S.C. § 1983 – Substantive Due Process - Investigational Drug

143.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 93, as if fully set forth herein.

144.   The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution guarantees the right to due process of law before infringing a citizen's interest in life, liberty, or property.

145.   The Supreme Court established a two-pronged approach to analyze a substantive-due-process claim.[32] First, the Due Process Clause protects fundamental rights and liberties deeply rooted in this nation's history and tradition. *Moore* v. *East Cleveland,* 431 U. S. 494, (1977). Second, the Court requires a "careful description" of the asserted fundamental liberty interest. *Reno* v. *Flores,* 507 U. S. 292 (1993)

146.   Plaintiffs have a fundamental right to refuse investigational drugs not licensed by the FDA for general commercial marketing.

147.   Starting in 1938 with the FDCA Act, the federal government prohibited drugs from being introduced into commerce before the FDA approved them for general marketing according to their labeling (21 U.S.C. § 355(a))(i.e., FDA-licensed).

148.   In 1974, Congress passed the National Research Act requiring an institutional review board to monitor research activities involving humans and unapproved therapeutics and devices.

---

[32] *Washington v. Glucksberg*, 521 U.S. 702 (1997)

149.   In 1978, the Belmont Report was published and formed the basis of the Common Rule (45 C.F.R. Part 46). The entire federal budget must adhere to the Common Rule.

150.   In 1992, the U.S. Senate ratified Article VII ICCPR Treaty.

151.   In 2001, the federal government required all persons conducting business with its agencies, departments, or the military to have an FWA on file before they use federal funding when involving humans with investigational medical products.

152.   Today, all US States and Territories, and most hospitals, county clinics, universities, and medical facilities have an FWA.

153.   The State of California has more than 4,500 active FWAs.

154.   Congress established strict requirements upon persons relating to investigational new drugs under 21 U.S.C. 321, 331, 351, 352, 355, 360bbb, and 371; 42 U.S.C. 262; 10 U.S.C. § 1107; 45 C.F.R. Part 46; 21 C.F.R. §§ 50,56; 10 U.S.C. § 980; Article VII ICCPR Treaty; 21 C.F.R. § 312; and the Belmont Report.

155.   The primary requirement of these statutes, agreements, and treaties is that a person offering a federally funded investigational product must ensure that the potential recipient is never under outside pressure to participate, such as "sanctions," "coercion," "undue influence," and "unjustifiable pressures."

156.   The right to refuse an investigational drug is a fundamental right that is pervasive, historical, and deeply rooted in the fabric of the $600b pharmaceutical research industry and this nation.

157.   Moreover, no constitution, statute, regulation, or treaty provides any person any authority to require another person to be administered an investigational drug under threat of penalty.

158.   An investigational drug has more than one-trillion potential adverse reactions to 19,000 FDA-licensed drugs and hundreds of diseases.

159.   Defendants could not assure Plaintiffs that the federally owned COVID-19 investigational drugs would not result in a loss of property (loss of career due to physical injury), life, or liberty.

160.   A requirement to be injected with an investigational drug demonstrates Defendants' reckless behavior, willful ignorance of the law, and deliberate indifference to Plaintiffs' financial, health, and personal goals.

161.   Defendants violated Plaintiffs' substantive due process rights when penalizing them for refusing an investigational drug.

162.   The Defendants' actions described above, individually and/or collectively, and in derogation of the Constitution and the above statutes, regulations, and treaty, have deprived the Plaintiffs of their substantive due process

rights as described in the above facts, thereby causing them damages described in Paragraphs 227 through 232, *infra*.

## FIFTH COUNT
### 42 U.S.C. § 1983 – Substantive Due Process -- PREP ACT

163.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 93, as if fully set forth herein.

164.   The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution guarantees the right to due process of law before infringing a citizen's interest in life, liberty, or property.

165.   Individuals have the explicit and fundamental right to due process.

166.   All drugs and devices under Defendants Executive Order were listed as covered countermeasures under the PREP Act.

167.   The County policy[33] required only employees who refused to inject the investigational new drug to register with Fulgent Genetics and to submit to the company's testing articles, which were also under the PREP Act and/or EUA.

168.   As described above, the PREP Act provides immunities by depriving participants of their right to seek judicial relief in the event of injury from a PREP Act countermeasure.

_____

[33] Exhibit D, Executive Order, p. 34

169.   Relinquishment of that right must be voluntary and not compulsory.

170.   Defendants violated Plaintiffs' substantive due process rights when penalizing them for refusing to surrender their right to seek judicial relief should they sustain injuries from a covered countermeasure under the PREP Act.

171.   The Defendants' actions described above, individually and/or collectively, and in derogation of the Constitution and the above statutes, regulations, and treaty, have deprived the Plaintiffs of their substantive due process rights under the PREP Act as described in the above facts, thereby causing them damages described in Paragraphs 227 through 232, *infra*.

## FIFTH CAUSE OF ACTION
### Unconstitutional Conditions Doctrine - 42 U.S.C. § 1983

172.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 93, as if fully set forth herein.

173.   "…[T]the state, having power to deny a privilege altogether, may grant it upon such conditions as it sees fit to impose. But the power of the state in that respect is not unlimited; and one of the limitations is that it may not impose conditions which require the relinquishment of constitutional rights. If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. It is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of

existence (emphasis added)." *Frost Trucking Co. v. R.R. Com*, 271 U.S. 583, 593-94 (1926)

174.   Defendants established an unconstitutional condition requiring Plaintiffs to surrender their Constitutional rights (i.e., due process, privacy, equal protection) under the Fourteenth Amendment to enjoy privileges they were otherwise entitled to (i.e., public employment, retirement benefits, health insurance, etc.) when establishing and enforcing its Policy.

175.   The Defendants' actions described above, individually and/or collectively, and in derogation of the Constitution and the above statutes, regulations, and treaty, manipulated the Constitutional rights of Plaintiffs out of existence as described in the above facts, thereby causing them damages described in Paragraphs 227 through 232, *infra*.

## SIXTH CAUSE OF ACTION
## 42 U.S.C. § 1983- Invasion of Privacy

176.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 93, as if fully set forth herein.

177.   The Fourteenth Amendment provides a liberty interest in the right of privacy from unwanted, unwarranted, and unjustified governmental intrusion.

178.   The right to autonomously choose whether to use an investigational drug is a fundamental privacy right held by Plaintiffs, which Defendants were not authorized by law, constitution, or emergency protocols to deprive.

179.   The County of Los Angeles required Plaintiffs to involuntarily surrender their Private Health Information to Fulgent Genetics, a third-party contractor for the County of Los Angeles.

180.   The County policy[34] required only persons who refused to inject the investigational new drug into their bodies to notify Fulgent Genetics of that private decision as a condition to maintain public employment.

181.   Defendants acted with moral turpitude by enacting a Policy allowing government employees and private contractors to continually invade the privacy rights of Plaintiffs in violation of the Fourteenth Amendment.

182.   The Defendants' actions described above, individually and/or collectively, and in derogation of the Constitution and the above statutes, unconstitutionally invaded Plaintiffs' privacy, thereby causing them damages described in Paragraphs 227 through 232, *infra*.

## SEVENTH CAUSE OF ACTION
## 42 U.S.C. § 1983- *Monell* Liability

_____

[34] Exhibit D, Executive Order, p. 34

_____
COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS, BREACH OF CONTRACT, AND
WRONGFUL TERMINATION; DEMAND FOR JURY TRIAL

183.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 90, as if fully set forth herein.

184.   The Los Angeles County Code Provides:

(1) "The Chair is hereby designated the operational area coordinator, with responsibility for activating the operational area to coordinate interjurisdictional emergency operations during a "state-of-war emergency", state of emergency, and local emergency, in accordance with SEMS." (2.68.100)

(2) "The Board, or if the Board is not in session, in the following priority order, the Chair, the Chief Executive Officer, or the Sheriff may proclaim a local emergency. Pursuant to the California Emergency Services Act, whenever a local emergency is proclaimed by an authorized County officer, the local emergency shall not remain in effect for a period in excess of seven days unless it has been ratified by the Board." (2.68.110)

(3) "To provide prompt response to emergency situations following the proclamation of a local emergency as authorized in this chapter, the proclamation of a state of emergency, or the existence of a state-of-war emergency, the Board specifically delegates, in the following priority order, to the Chair…" (2.68.150)

185.   LACC Chapter 2.68 provides powers and duties to city employees acting under the explicit authority of the Chair and BOS.

186.   The Chair and BOS have explicit final PolicyMaking authority regarding emergency declarations, official emergency policymaking, and directing the activities of the Los Angeles Emergency Management Council (2.68.170) during a declared emergency such as the declared March 4, 2020 emergency proclaimed by the Chair (Defendant Hilda Solis) regarding the COVID-19 virus leading to her issuing the August 4, 2021 Executive Order.

187.   The Chair, and the BOS, have final policymaking authority with regard to writing, enacting, executing, and enforcing its policies governing the conduct of City employees performing functions on behalf of the City.

188.   The Policy established and/or approved by the BOS constitutes the official policy of the City and was the moving force behind, and caused, Plaintiffs' injuries.

189.   The County of Los Angeles knew of its ministerial duty under the CDC Program, Provider Agreement, FWA, and the EUA statute to accept the chosen option of Plaintiffs and willfully ignored that duty when penalizing Plaintiffs for choosing an option the County disagreed with.

190.   The act of penalizing Plaintiffs was an *ultra vires* discretionary act preempted by the Supremacy Clause and express preemption language under the PREP Act.

191.   The County, acting by and through its respective BOS and/or other policymakers, made a deliberate and/or conscious decision to disregard the known health risks of the federally funded investigational drugs when establishing and enforcing its Policy.

192.   The County, acting by and through its respective BOS and/or other policymakers, made a deliberate and/or conscious decision to disregard the known

legal rights of Plaintiffs regarding the federally funded EUA/PREP Act investigational drugs when establishing and enforcing its Policy.

193.   The County, acting by and through its respective BOS and/or other policymakers, made a deliberate and/or conscious decision to disregard the known rights of Plaintiffs under the PREP Act when establishing and enforcing its Policy.

194.   The County, acting by and through its BOS and/or other policymakers, made a deliberate and/or conscious decision to disregard the known rights of Plaintiffs under each EUA when establishing and enforcing its Ordinance.

195.   Starting on August 4, 2021 and continuing through the filing of this Amended Complaint, the County of Los Angeles, with deliberate indifference to the rights of Plaintiffs, tolerated, permitted, and willfully allowed its employees to subject Plaintiffs to nonconsensual investigational drug use by applying penalties for noncompliance with its official Policy.

196.   The County of Los Angeles had knowledge of each EUA and countermeasure published in the Federal Register and the lawful obligations of its vaccination providers under the Provider Agreement.

197.   The County of Los Angeles had the power and obligation to terminate the Policy before depriving Plaintiffs of their statutory and constitutional rights.

198.   By refusing to terminate the Policy, the County of Los Angeles caused county employees to act with impunity and without fear of retribution when

43

violating federal law by subjecting humans to nonconsensual investigational drug use in a federal program.

199.   The County of Los Angeles knew of its legal duties under its FWA and willfully violated those duties when enforcing its Policy.

200.   The County of Los Angeles knew of its legal duties under the Provider Agreement and willfully violated those duties when enforcing its Policy.

201.   The County of Los Angeles knew of its legal duties under each EUA as the emergency response stakeholder and willfully violated those duties when enforcing its Policy.

202.   The County of Los Angeles willfully deprived Plaintiffs of their Constitutional right to Privacy under the Fourteenth Amendment when enforcing its Policy.

203.   The County of Los Angeles willfully deprived Plaintiffs of their Constitutional right to Equal Protection under the Fourteenth Amendment when enforcing its Policy.

204.   The County of Los Angeles willfully deprived Plaintiffs of their Constitutional right to procedural and substantive Due Process under the Fourteenth Amendment when enforcing its Policy.

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS, BREACH OF CONTRACT, AND WRONGFUL TERMINATION; DEMAND FOR JURY TRIAL

205.   The County of Los Angeles willfully deprived Plaintiffs of their federal right to refuse the EUA/PREP Act products without incurring a penalty or losing a benefit to which they were otherwise entitled.

206.   At all times material, the County of Los Angeles concealed from Plaintiffs their right to refuse the mandated medical products without consequence.

207.   Plaintiffs' injuries are a direct and proximate result of the acts and omissions of Los Angeles.

208.   As a direct and proximate result of the acts and omissions described herein, Plaintiffs suffered compensatory and special damages as defined under federal common law and in an amount to be determined by a jury.

209.   The Defendants' actions described above, individually and/or collectively, and in derogation of the Constitution and the above statutes, deprived Plaintiffs' privacy rights, thereby causing them damages described in Paragraphs 227 through 232, *infra*.

## EIGHTH CAUSE OF ACTION
### Breach of Contract

210.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 93, as if fully set forth herein.

211.   In the alternative to an employment at-will relationship, certain Plaintiffs were employed by the County of Los Angeles pursuant to a written employment contract.

212.   Plaintiffs' written employment contract(s) with Defendant County of Los Angeles did not include a provision requiring Plaintiffs to accept EUA/PREP Act COVID-19 investigational drugs or testing as a condition of employment.

213.   Plaintiffs' written employment contract(s) were never modified in a mutually agreed-upon writing requiring Plaintiffs to accept EUA/PREP Act COVID-19 investigational drugs or to engage in repeated testing using EUA/PREP Act test kits as a condition of retaining their contracted-for employment.

214.   Plaintiffs fully performed every requirement of their written employment contract(s).

215.   Breach of the Plaintiffs' written employment contracts occurred when the County of Los Angeles through its various department managers penalized and terminated Plaintiffs for refusing to be injected with EUA/PREP Act COVID-19 investigational drugs or to engage in repeated testing using EUA/PREP Act test kits as a condition of retaining their employment.

216.   As a direct result of the County of Los Angeles's breach of contract, Plaintiffs sustained and seek recovery of and for the following: loss of pay (front pay and back pay); loss of seniority; removal from promotion eligibility tracks;

deprivation of promotions; loss of benefits; loss of accumulated sick pay, vacation, compensatory time, and/or paid time off; negative tax consequences (in the event of a lump sum award), including related accountant fees; attorneys' fees; emotional distress; mental, psychological and physical harm; loss of income; loss of enjoyment of life; and compensatory, punitive, exemplary, legal, equitable, nominal and all other damages that this Court deems necessary and proper.

## NINTH CAUSE OF ACTION
### Against Defendant County of Los Angeles
### Wrongful Termination in Violation of Govt. Code § 12940 et seq.

217.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 93, as if fully set forth herein.

218.   In the alternative, and in the event this court finds that Plaintiffs are at-will employees of the County of Los Angeles, and further finds that California's at-will employment doctrine was not preempted by federal law, the current circumstances present a public policy exception to California's at-will employment doctrine.

219.   As demonstrated above, the Plaintiffs possessed and exercised a statutory right to refuse to be injected with an EUA/PREP Act drug.

220.   As a result of Plaintiffs' exercise of their statutory right to refuse being injected with an EUA/PREP Act drug, the County of Los Angeles took

adverse actions against the Plaintiffs, including but not limited to suspension without pay; forced retirement; forced resignation; and termination.

221.   The County of Los Angeles had no authority to take adverse action against the above Plaintiffs for exercising their statutory right to refuse an EUA/PREP Act drug, but nevertheless did so, thereby resulting in the wrongful suspensions, forced resignations, forced retirements, and terminations of Plaintiffs, among other resulting harms.

222.   As a direct result of Defendants' adverse employment actions against them, Plaintiffs sustained and seek recovery of and for the following: loss of pay (front pay and back pay); loss of seniority; loss of promotions; loss of training and advancement; loss of benefits; loss of accumulated sick pay, vacation, compensatory time, and/or paid time off; negative tax consequences (in the event of a lump sum award), including related accountant fees; attorneys' fees; emotional distress; mental, psychological and physical harm; loss of income; loss of enjoyment of life; and compensatory, punitive, exemplary, legal, equitable, nominal and all other damages that this Court deems necessary and proper.

## TENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

223.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 93, as if fully set forth herein.

224.   When the United States Congress refused to allow Defendants to apply consequences to Plaintiffs who refused to participate in the use of EUA/PREP Act COVID-19 investigational drugs, Defendants engaged in a scorched-earth policy and inflicted, with malicious intent, severe emotional distress to the fullest extent that one in their positions of authority and power could inflict, all to the detriment of Plaintiffs' emotional well-being.

225.   The Defendants' conduct, committed with gross negligence, recklessness, or intent, as described above, gives rise to a claim of outrageous conduct and intentional infliction of emotional distress under the common law of the State of California against the Defendants for the damages described in Paragraphs 227 through 232, *infra*.

## VII.  DAMAGES RECOVERABLE AND DEMANDED

226.   The following paragraphs are hereby incorporated by reference into Counts One through Ten, as if set forth here *in extenso*.

227.   As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiffs have suffered past damages and will suffer future damages, both compensatory and general, including, but not limited to, front and back pay; loss of benefits; loss of accumulated sick pay; loss of retirement accounts; lost earnings on retirement funds; vacation time, compensatory time, and paid time off; negative tax consequences (in the event of a lump sum award),

including related accountant fees; attorneys' fees; emotional distress; mental, psychological and physical harm; loss of income; loss of enjoyment of life; for which defendants are liable in compensatory, punitive, exemplary, legal, equitable, and all other damages that this Court deems necessary and proper.

228.   When the Defendants' behavior reaches a sufficient threshold, punitive damages are recoverable in § 1983 cases. *Smith v. Wade*, 461 U.S. 30 (1983).  Because Defendants' actions were intentional and willful, Plaintiffs are entitled to, and hereby demand, an award of punitive damages against each and every Defendant in an amount sufficient to deter them, individually and collectively, from repeating their unconstitutional actions.  *Smith v. Wade*, 461 U.S. 30 (1983).

229.   Because Defendants' actions involved reckless or callous indifference to the Plaintiffs' federally protected rights, Plaintiffs are entitled to, and hereby demand, an award of punitive damages against each and every Defendant in an amount sufficient to deter them, individually and collectively, from repeating their unconstitutional actions.  *Smith v. Wade*, 461 U.S. 30 (1983).

230.   Because Defendants' actions were motivated by evil motive or intent, Plaintiffs are entitled to, and hereby demand, an award of punitive damages against each and every Defendant in an amount sufficient to deter them, individually and

collectively, from repeating their unconstitutional actions. *Smith v. Wade*, 461 U.S. 30 (1983).

231.   Plaintiffs seek recovery of attorneys' fees under the Civil Rights Attorneys' fees Awards Act of 1976 and 42 U.S.C. § 1988, and under any other provision of law or basis.

232.   Plaintiffs seek recovery of all court costs and out-of-pocket litigation expenses, including but not limited to expert fees, as well as legal interest on any amount of damages awarded.

## VIII.  JURY TRIAL DEMANDED

233.   Plaintiffs are entitled to, and hereby demand, a trial by jury on all issues of fact.

## IX.  PRAYER

Wherefore, Plaintiffs pray for judgment in their favor and against Defendants as follows:

## ON THE FIRST CAUSE OF ACTION

1.   For damages described above for depriving Plaintiffs of their right to refuse an investigational drug without penalty.

2.   For reasonable attorneys' fees.

## ON THE SECOND CAUSE OF ACTION

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS, BREACH OF CONTRACT, AND WRONGFUL TERMINATION; DEMAND FOR JURY TRIAL

1.     For damages described above for the deprivation of Plaintiffs' equal protection rights under the Constitution.

2.     For reasonable attorneys' fees.

**ON THE THIRD CAUSE OF ACTION**

1.     For damages described above for the deprivation of Plaintiffs' due process rights under the Constitution.

2.     For reasonable attorneys' fees.

**ON THE FOURTH CAUSE OF ACTION**

1.     For damages described above for deprivation of Plaintiffs' Substantive Due Process rights regarding an investigational drug.

2.     For reasonable attorneys' fees.

**ON THE FIFTH CAUSE OF ACTION**

1.     For damages described above for breach of the Unconstitutional Conditions Doctrine.

2.     For reasonable attorneys' fees.

**ON THE SIXTH CAUSE OF ACTION**

For damages described above for invasion of privacy.

2.     For reasonable attorneys' fees.

**ON THE SEVENTH CAUSE OF ACTION**

1.     For damages described above for § 1983 deprivations committed by a municipality.

2.     For reasonable attorneys' fees.

**ON THE EIGHTH CAUSE OF ACTION**

1.     For damages described above for breach of contract.

2.     For reasonable attorneys' fees.

**ON THE NINTH CAUSE OF ACTION**

1.     For damages described above for wrongful termination.

2.     For reasonable attorneys' fees.

**ON THE TENTH CAUSE OF ACTION**

1.     For damages described above for intentional infliction of emotional distress.

2.     For reasonable attorneys' fees.

**ON ALL CAUSES OF ACTION**

1.     For judgment in favor of Plaintiffs;

2.     For costs of suit herein; and

3.     For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS, BREACH OF CONTRACT, AND
WRONGFUL TERMINATION; DEMAND FOR JURY TRIAL

**SCHEXNAYDRE LAW FIRM**
BY:   /s/ *David J. Schexnaydre*
DAVID J. SCHEXNAYDRE, T.A.
Louisiana Bar Roll #: 21073
2895 Highway 190 • Suite 212
Mandeville, Louisiana 70471
Telephone: (985) 292-2020
Fax: (985) 235-1089
Email: david@schexnaydre.com
Lead Counsel for Plaintiffs-*Pro Hac Vice*


AND


**JENNIFER W. KENNEDY**
**ATTORNEY AT LAW**
BY:   /s/ *Jennifer W. Kennedy*
JENNIFER W. KENNEDY, ESQ.
CA Bar No.: 185406
61 S. Baldwin Ave #1626
Sierra Madre, CA 91025-7076
Telephone: 626-888-2263
Email: jenniferkennedyesq@gmail.com
Local Counsel for Plaintiffs

54

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a right to a jury trial for all matters so triable.

**SCHEXNAYDRE LAW FIRM**

Dated: March 1, 2024          /s/ David Schexnaydre, Esq.

**Jennifer W. Kennedy, Attorney at Law**

Dated: March 1, 2024          /s/ Jennifer W. Kennedy, Esq.

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS, BREACH OF CONTRACT, AND
WRONGFUL TERMINATION; DEMAND FOR JURY TRIAL